TREUHAFT & ZAKARIN LLP
347 Fifth Avenue, Ste 1000
New York NY 10016
917-539-6312
Norah Hart, Esq.
And Miriam Zakarin, Esq.
  Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IRIS DALA, | Civil Action No. 07-cv-267 (LBS) (KNF) |
| Plaintiff, | |
| v. | AMENDED COMPLAINT |
| | Jury Trial Demanded |
| GAP, INC., | |
| Defendant. | |

### NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C §§12101 *et seq.*, § 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C §2000e-3(a), the Family and Medical Leave Act of 1993, 29 U.S.C. §§2601 *et seq.* ("FMLA"), the New York State Human Rights Law, Executive Law § 290 *et seq.*, the New York City Administrative Code §8-101 *et seq.*, and wrongful termination. As alleged with greater specificity under the Statement of Claims section below, the Plaintiff alleges that the Defendant Gap, Inc. ("Gap" or "Defendant") discriminated against the Plaintiff by denying knowledge of her disability and denying Plaintiff reasonable accommodation, harassing the Plaintiff on the job, retaliating against her, and wrongfully terminating her.

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to § 107(a) of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference §§ 706(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. The pendent jurisdiction of the Court, 28 U.S.C. §1367, is invoked over state law causes of action.

2. The alleged unlawful employment practices were committed within the jurisdiction of the United States District Court for the Southern District of New York. Venue is proper in this court pursuant to 28 U.S.C. §1391(b).

## PARTIES

3. Plaintiff, Iris Dala, is a resident of the County of Queens, State of New York.

4. At all relevant times, Plaintiff has had a physical impairment that substantially limits one or more major life activities, including any activity.

5. At all relevant times, Defendant, Gap, has continuously been a company doing business in the State of New York and the county of Manhattan and has continuously had at least fifteen (15) employees.

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## STATEMENT OF CLAIMS

7. More than thirty days prior to the institution of this lawsuit, the Plaintiff filed charges with the Equal Employment Opportunity Commission alleging violations of Title I of the ADA by Defendant. All conditions precedent have been fulfilled.

8. Defendant, Gap, has engaged in unlawful employment practices in violation of Sections 102 and 503 of the ADA, 42 U.S.C. §§ 12112 and 12203, as outlined below:

9. Plaintiff worked for Gap from November 22, 2002 through December 5, 2005.

10. Plaintiff became a full-time employee of Defendant on January 14, 2003.

11. Plaintiff performed her job duties satisfactorily at all times.

12. On September 18, 2003 Plaintiff was injured at the 42nd Street and Broadway Gap Store

during her shift as an Employee Entrance monitor. Plaintiff moved heavy boxes that had been delivered by UPS from where they were obstructing the employee entrance and soon after began feeling pain and weakness in her lower back and legs.

13.  Plaintiff is disabled within the meaning of the statute in that her workplace injury substantially limits a major life activity, i.e. her ability to stand for more than an hour or two without a rest break. In addition Plaintiff was regarded as disabled by Defendants, e.g. one Defendant stated "Your disability is affecting the business." In addition, there was a record of Plaintiff's disability established throughout the relevant period, starting immediately after the workplace injury when she provided a "Certificate of Disability" to Defendants that read "To Whom It May Concern: This is to certify that the above named patient has been under my care from 09/19/03 to present and is incapacitated at this time because of sprain lumbar, thoracic sprain. This is to further certify that Ms. Dala will not be able to return to work / school until 09/23/03. Comments: Patient is advised to bed rest due to severe pain." Ample record of her disability was provided to the Defendants by the Plaintiff throughout the relevant period. The week the Plaintiff was suspended without pay, Plaintiff's physician completed a Medical Certificate of Disability which asked: "Does the employee have a mental or physical impairment? "If the answer to Question 1 is "Yes", Does the impairment limit the employee's ability to perform one or more major life activity?" Yes was the doctor's response to both questions.

14.  The day after the injury, on or about September 19, 2003, Plaintiff felt severe pain and sought medical attention from a Dr. Liebowitz, M.D.

15.  Dr. Liebowitz completed a "Disability Certificate", dated September 19, 2003, for the Plaintiff which read: "To Whom It May Concern: This is to certify that the above named patient has been under my care from 09/19/03 to present and is incapacitated at this time because of sprain lumbar, thoracic sprain. This is to further certify that Ms. Dala will not be able to return to work / school until 09/23/03. Comments: Patient is advised to bed rest due to severe pain."

16.  From around September 19, 2003 through September 23, 2003, Plaintiff was on leave of absence from work pursuant to Dr. Liebowitz's recommendation. Plaintiff called in sick to Derick Phillip, Supervisor of Loss Prevention and Employee Entrance at 42nd Street and Broadway Gap Store.

17.  Plaintiff gave a copy of Dr. Liebowitz's September 19, 2003 "Disability Certificate" on the day she returned to work to Derick Phillip. Plaintiff retained a copy of this doctor's note.

18. On or about September 30, 2003 Plaintiff again began to feel severe pain and sought medical attention from Dr. Liebowitz, M.D. Plaintiff was given a second "Disability Certificate" completed by Dr. Liebowitz. It read: "To Whom It May Concern: This is to certify that the above named patient has been under my care from 09/19/03 to present and is incapacitated at this time because of sprain lumbar. This is to further certify that Ms. Dala will / <u>will not</u> be able to return to <u>work</u> / school until 10/06/03. Comments: Patient should stay home and rest and should return to work when she feels ready." Plaintiff gave a copy of Dr. Liebowitz's September 30, 2003 "Disability Certificate" to Derick Phillip on the day she returned to work. Plaintiff retained a copy of this doctor's note.

19. From around September 30, 2003 through October 6, 2003, Plaintiff was on leave of absence from work pursuant to Dr. Liebowitz's recommendation. Plaintiff provided management with Dr. Liebowitz's note and retained a copy.

20. On or about November 7, 2003 Plaintiff was promoted to Loss Prevention Agent.

21. On or about November 16th Plaintiff was transferred from the 42nd Street Store to the 48th Street and Sixth Avenue Gap Store. In her new position Plaintiff was required to stand at all times.

22. On or about December 16, 2003, Plaintiff felt severe pain and weakness during her shift. Plaintiff was taken in an ambulance from the 48th Street Gap Store went to the emergency room at St. Vincent's/St. Clare's Hospital. Plaintiff was seen by Dr. Bjorn.

23. Dr. Bjorn completed a form for the Plaintiff, dated December 16, 2003, which read: "The above patient was seen and evaluated in the Emergency Department on 12/16/03. He/she is excused from work until 12/20/03.

24. From around December 17, 2003 through December 22, 2003, Plaintiff was on leave of absence from work pursuant to Dr. Bjorn's recommendation. Plaintiff provided management with Dr. Bjorn's note and retained a copy.

25. Plaintiff attempted throughout the months following her injury to inform Defendant managers of her difficulties by submitting doctor's notes and verbally explaining that she needed to alternate periods of standing with periods of sitting or walking. Plaintiff informed her managers of her pain and limited ability to stand for more than two hours.

26. Plaintiff often experienced back pain and severe weakness, shakiness and back spasms during her shifts.

27. Frequently Plaintiff was required to stand for more than four hours at a time and was denied

4

rest breaks by Defendant managers.

28. On or about March 16, 2004, Plaintiff visited Dr. Nahid Nainzadeh, M.D. complaining of pain and weakness in her back and legs. Dr. Nainzadeh advised her to rest for two weeks.

29. Dr. Nainzadeh wrote a note dated March 16, 2004 stating, "To Whom It May Concern: The above named pt (sic) is under my care w/ DX of acute low back strain. I have advised the pt to rest for next 2 wks. She will be evaluated in interim." Plaintiff retained a copy of this doctor's note.

30. From about March 16, 2004 through March 30, 2004 Plaintiff was on leave of absence from work pursuant to Dr. Nainzadeh's recommendation. Plaintiff provided management with Dr. Nainzadeh's note and retained a copy.

31. On or about April 20, 2004, Plaintiff visited Dr. Nainzadeh, M.D. because she continued to experience pain and weakness. Plaintiff obtained a note from Dr. Nainzadeh. Dr. Nainzadeh's April 20, 2004 note stated "To Whom It May Concern: The above named pt is under my care w/ diagnosis of acute L-B-P. Pt needs to sit and stand alternatively during her 8 HR w/day frequently." Plaintiff retained a copy of this doctor's note.

32. Plaintiff gave to 48th Street Store Manager Fernando Vago a copy of Dr. Nainzadeh's April 20, 2004 note.

33. On or about April 20, 2004, Fernando Vago refused Plaintiff when she asked to be excused for her fifteen minute company breaks.

34. Plaintiff found Defendant managers increasingly hostile toward her and more frequently refusing her when she asked to be excused for her fifteen minute company breaks.

35. Gap store managers, including Fernando Vago, Juan Bonilla, Ramdath Singh, and Dena Miaoulis, et al., repeatedly refused to allow Plaintiff to sit and stand alternatively as Dr. Nainzadeh recommended in her note of April 20, 2004, and at times refused her any break at all during a four hour period, and at times refused Plaintiff the company policy mandated break of 15 minutes every two hours or even a bathroom break.

36. During the weeks following April 20, 2004, Fernando Vago rudely snapped at Plaintiff stating there was "no coverage," when Plaintiff asked for her fifteen minute company break.

37. On numerous occasions during the relevant period, Mr. Vago refused the Plaintiff any break at all during a four hour period and also refused Plaintiff the fifteen minute company break of 15 minutes every two hours.

38. On numerous occasions, Defendant managers refused plaintiff a bathroom break.

39. Plaintiff began to fear asking for even the fifteen minute company breaks because she felt intimidated by managers. Plaintiff was denied on many occasions even a bathroom break.

40. Plaintiff began to fear for her job.

41. Plaintiff began to experience severe anxiety and emotional distress.

42. Plaintiff occasionally was relieved at her post by co-worker Maria Rivera, who overheard Gap managers refuse her requests for fifteen-minute company breaks.

43. On or about May 18, 2004 Plaintiff visited Dr. Nainzadeh, M.D. complaining of severe pain and weakness. Plaintiff obtains a note from Dr. Nainzadeh. Dr. Nainzadeh's May 18, 2004 note stated: "To Whom It May Concern: The above named pt is under my care w DX of acute L-B-P. Pt was unable to return to work 5/16/04 and 5/17/04 and 5/18/04. She will ret on 5/19/04." Plaintiff returns to work and gives a copy of Dr. Nainzadeh's May 18, 2004 note to the manager on duty. Plaintiff retained a copy of this doctor's note.

44. On or about June 8, 2004 Plaintiff visited Dr. Nainzadeh, M.D. complaining of severe pain and weakness. Plaintiff obtains a note from Dr. Nainzadeh. Dr. Nainzadeh's June 8, 2004 note stated: "To Whom It May Concern: The above named pt is under my care w DX of L-B-P. She is to rest for next 2 wks. Retrn to work on 6/21/2004." Plaintiff retained a copy of this doctor's note. Plaintiff returns to work on June 23, 2004 and gives a copy of Dr. Nainzadeh's June 8, 2004 note to the manager on duty.

45. On or about November 24, 2004, Plaintiff gives Head Manager Fernando Vago a note from Bonnie Glassman, a physical therapist, dated November 24, 2004. The note read: "This is to certify that Iris Dala has been under my care for the following: for severe low back pain bedrest recommended and is able to return to work on 11/28/04." recommending she go for therapy three times a week on Mondays, Wednesdays and Fridays."

46. On or about December 10, 2004, Plaintiff saw Dr. Jean Francois, M.D. complaining of severe pain and weakness.

47. On or about December 10, 2004, Plaintiff submitted a note to one of the office managers on duty at the 48th Street Store from Dr. Francois. The note read: Please be advised that Ms Iris Dala is currently being treated in our office for injuries sustained in a work related accident of 09/18/03. Ms. Dala is capable of working full duty; however, please allow the following: Flexibility of employment duties, for rest is advised (15 minute rest break every hour). Patient is scheduled for treatment Monday, Wednesday, and Friday at 5:30 pm. Patient must continue with care. Please

6

allow her schedule to accommodate treatment following work. Patient is unable to work for five consecutive days. Please allow for a day off every two or three days."

48. Defendant's managers continued to ignore Plaintiff's requests to sit and stand alternatively as several doctors were recommending.

49. On or about July 8, 2005, Plaintiff took a leave of absence.

50. From August 11, 2005 through August 22, 2005, Plaintiff was absent on a two week leave of absence.

51. On or about August 28, 2005, Plaintiff was having difficulty standing and was refused her fifteen minute company break by Assistant Manager Juan Bonilla, who told her "Iris, your disability is affecting the business."

52. Plaintiff felt harassed and rudely treated by Assistant Managers Ramdath Singh, Juan Bonilla, and Head Store Manager Dena Miaoulis. Plaintiff was watched more closely than usual spoken to in a rude manner, written up for several disciplinary violations that she felt were unfounded, and management continued to frequently deny Plaintiff's requests for fifteen minute company breaks and requests to sit and stand alternatively to accommodate her painful back injury.

53. On or about September 1, 2005, Plaintiff was reprimanded for helping a customer on or about August 31, 2005 by Assistant Manager Ramdath Singh and told to "pay more attention to the floor."

54. Ono r about September 1, 2005, Plaintiff told Assistant Manager Ramdath Singh she felt harassed because of her disability and she was going to seek legal help.

55. On September 1, 2005, Plaintiff was forced to work with no fifteen-minute company break from 4:30 to 9:00. Plaintiff dared not step away even for a bathroom break for fear of losing her job.

56. On September 5, 2005 Plaintiff was called to the store office. The Head Store Manager Dena Miaoulis asked Plaintiff why she felt harassed. Plaintiff recounted the reasons she felt harassed and made to fear for her job, and how her requests for minimal accommodation had been denied. Plaintiff was told by Ms. Miaoulis, "Maybe you should look for another job if it's too hard for you."

57. September 5, 2005 Plaintiff asked Ms. Miaoulis for a transfer to another store where she could "sit, stand and walk in equal measures." Ms. Miaoulis told Plaintiff she would get back in touch with Plaintiff regarding this issue. Plaintiff never heard back from Ms. Miaoulis regarding

her transfer request or her complaint of harassment despite many times approaching Ms. Miaoulis to ask for a meeting.

58.     On or about September 15, 2005 Ramdath Singh told Plaintiff she could no longer come in at 7:30 and leave at 4:30. He told Plaintiff there was "no exceptions" to his schedule change.

59.     On or about September 21, 2005, Plaintiff was given a disciplinary action notice for violating the company policy by coming in and leaving at 4:30, despite the official form provided by the Defendant, i.e. "availability" form, on file indicating the Plaintiff's availability from 7:30 to 4:30 and despite the more than one year that this schedule had been in place.

60.     Plaintiff was given another disciplinary action notice for leaving early on September 18, 2005. Plaintiff left at the same time as co-worker Gene Wong, who was not written up, and in keeping with routine early Sunday night closing.

61.     Plaintiff refused to sing the disciplinary notice on or about September 21, 2005.

62.     On or about September 21, 2005, Plaintiff told Dena Miaoulis that she felt harassed and made to fear for her job.

63.     Plaintiff contacted a Gap Regional Manager, John Calo, to complain of the unfounded accusations, stating that that she felt harassed and made to fear for her job.

64.     On or about October 14, 2005, Dena Maioulis gave Plaintiff a Medical Certificate of Disability: Accommodation Inquiry (MCOD) and instructed her to have it filled out by her doctor.

65.     On or about October 18, 2005 Plaintiff returned the forms filled out by Dr. Sang Song.

66.     On or about December 5, 2005 Plaintiff was suspended for five days by Gap management during a meeting including Luanne Fisher, a regional executive in Human Resources, Janine Marin, a regional manager of Loss Prevention, and Dena Mialouis, the Head Manager of the 48th Street Store. Plaintiff was given a second MCOD to complete. (Note, this MCOD was pre-printed with a date of October 14, 2005, although it was not given to Plaintiff until December 5, 2005.)

67.     On or about December 5, 2005, Plaintiff presented the MCOD to Dr. Neil Morgenstern, a physiatrist at New York Medical and Diagnostic in Kew Gardens Queens, for completion. Dr. Morgenstern circled YES on questions 1 and 2 of Gap's MCOD. Question 1 read: "Does the employee have a mental or physical impairment? Question 2 read: "If the answer to Question 1 is "Yes", Does the impairment limit the employee's ability to perform one or more major life activity?" Yes was the Dr.'s response to both questions on December 5, 2005.

68.     Plaintiff faxed the completed Dr. Morgenstern MCOD to Gap office fax number 212-760-

0365, and subsequently to 917-339-8100 on or about December 8th or 9th, 2005 from Instant Microfilm Associates, a fax center in Kew Gardens Queens, with the assistance of a store employee named Adrianne Barongi.

69. Plaintiff called Janine Marin to confirm receipt. Plaintiff was told by Janine Ms. Marin that Dr. Morgenstern's MCOD was "illegible."

70. Plaintiff asked Janine Marin to call Dr. Morgenstern in order to have him decipher the parts of the MCOD Ms. Marin felt were "illegible." Ms. Marin agreed to do so. Plaintiff gave her the phone number for Dr. Morgenstern's office, 718-261-1000. Janine Marin promised Plaintiff that she would call and get back to the Plaintiff.

71. Plaintiff never heard back from Janine Marin regarding the Dr. Morgenstern MCOD or the possibility of her return to work with reasonable accommodation.

72. Plaintiff was told by Ms. Marin not to return to work until the issue of her need for accommodation could be resolved.

73. Plaintiff's unpaid leave grew from five days to 23 months, and continues at the time of this filing.

74. Plaintiff called Janine Marin on or about January 4th or 5th or 6th, 2006 and was told by Ms. Marin that Plaintiff should contact Luanne Fisher, a regional executive in Human Resources, regarding the possibility of her return to work with reasonable accommodation because Ms. Marin herself was no longer involved.

75. Plaintiff begins trying to contact Luanne Fisher, pursuant to Ms. Marin's instructions, in order to discuss the possibility of her return to work with reasonable accommodation.

76. Plaintiff called Luanne Fisher on January 7, 9, 10, 11, 12, 16, and 18, 2006 from her home phone and/or cell phone.

77. Plaintiff never receives a return phone call from Luanne Fisher regarding the possibility of her return to work with reasonable accommodation.

78. Plaintiff retains Attorney Rebecca Northey on or about January 1, 2006.

79. On or about January 30, 2006 Ms. Luann Fisher was sent a letter by Attorney Rebecca Northey, who was representing the Plaintiff at the time. The letter stated, "Iris Dala has retained this law firm to contact Gap, Inc. ("Gap") regarding its failure to accommodate her back disability and its retaliation against her for seeking reasonable accommodation."

80. On or about February 21, 2006, Attorney Rebecca Northey faxed a copy of the letter sent to

Ms. Luann Fisher to Ms. Karla Franklin, an employee in Gap's legal department in San Francisco.

81. Plaintiff continued to try to request reasonable accommodation for her medical condition so that she could return to work for Gap throughout the remainder of 2006.

82. The Plaintiff was capable at all relevant times of performing the essential functions of the job of security guard, i.e. Loss Prevention Agent, with minimal accommodation.

83. The Plaintiff was not allowed to sit on a tall stool that was easily available on the sales floor. Plaintiff's requests to use a stool for short breaks, ten to fifteen minutes of each hour, were refused by a regional loss prevention manager at the 48th Street store during May of 2005; or with hourly rest breaks; or with reassignment to a security position involving less time standing up on her feet in a stationary position, or reassignment to a position incorporating some desk duty.

84. The effect of the practices complained of above has been to inflict emotional pain, suffering, and inconvenience upon Plaintiff.

85. The effect of the practices complained of above has been to deprive the plaintiff of equal employment opportunities and to otherwise adversely affect her status as an employee because of her disability and retaliation.

86. The unlawful employment practices complained of above were intentional and done with disregard for the plaintiff's protected rights under 42 U.S.C. § 12101 *et seq.*

## AS AND FOR A FIRST CAUSE OF ACTION

(Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C §§12101 et seq.)

83. Plaintiff repeats and reiterates every allegation contained in all previous paragraphs.

84. Title I of the ADA applies to employers with 25 or more employees and prohibits employment discrimination against qualified individuals with disabilities. SEC. 12203. Section 503(a) specifically prohibits retaliation against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual participated in any manner in a proceeding, or hearing under this chapter. Section 503(b) specifically prohibits interference, coercion, or intimidation of any individual in the exercise or enjoyment of any right granted or protected by this chapter.

85. Defendant intentionally discriminated against Plaintiff in violation of the ADA in that Defendant 1) ignored Plaintiff's requests for reasonable accommodation, e.g. a stool, or rest breaks, or reassignment; 2) failed to reasonably accommodate her; 3) failed to engage in an interactive process to assess Plaintiff's needs/disability; and 4) wrongfully suspended Plaintiff because it

regarded her as disabled and/or because she had a record of a disability.

86. As a direct and proximate result of said intentional and discriminatory conduct, Plaintiff has lost wages and other benefits; her future earning capacity has been substantially impaired; she has suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and she has suffered other non-pecuniary losses.

## AS AND FOR A SECOND CAUSE OF ACTION
(§ 704(a) of Title VII of Civil Rights Act of 1964 (42 U.S.C.A. § 2000e-3(a))

87. Plaintiff repeats and reiterates every allegation contained in all previous paragraphs.

88. Provision § 704(a) of Title VII of the Civil Rights Act of 1964 prohibits employers from retaliating against persons who have made a charge, testified, assisted, or participated in any manner in Title VII proceedings, such as external investigations, proceedings or hearings by the Equal Employment Opportunity Commission.

89. Defendant intentionally retaliated against Plaintiff in violation of the Civil Rights Act of 1964 by subjecting Plaintiff to threatening and harassing treatment on the part of Gap store managers who ignored Plaintiff's requests for reasonable accommodation, routinely denied her the standard company policy breaks and bathroom breaks, and by wrongfully suspending the Plaintiff.

## AS AND FOR A THIRD CAUSE OF ACTION
(The Family and Medical Leave Act of 1993, 29 U.S.C. §§2601 *et seq*).

89. Plaintiff repeats and reiterates every allegation contained in all previous paragraphs.

90. An employee who returns from FMLA leave is entitled to be restored to the same or an equivalent job (defined as one with equivalent pay, benefits, responsibilities, etc.) within a reasonable time after being notified by that employee of their desire to return to work. Employers are prohibited from discriminating against or interfering with employees who take FMLA leave. An employer must notify an employee in writing within three days of their rights under the FMLA.

91. Defendants failed to restore Plaintiff to her job despite receiving notice from Plaintiff repeatedly throughout January of 2006 that she was able to return to work. Defendant suspended Plaintiff without pay for 24 months. Defendant was not given notice of her rights under the FMLA.

92. As a direct and proximate result of said intentional and discriminatory conduct, Plaintiff has lost wages and other benefits; her future earning capacity has been substantially impaired; she has suffered severe emotional distress, humiliation, embarrassment, pain and suffering and loss of enjoyment of life; and she has suffered other non-pecuniary losses, all of which will be proven at

the Plaintiff of income in a manner that violated public policy.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests that this Court:

A.  Grant a permanent injunction enjoining Defendants, its officers, successors, assigns, and all persons in active concert with it, from engaging in employment practices which discriminate on the basis of disability and retaliation.

B.  Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities and which eradicate the effects of Defendant's past and present unlawful employment practices.

C.  Order Defendant to make whole the Plaintiff by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of their unlawful employment practices including, but not limited to, front pay.

D.  Order Defendant to make whole the Plaintiff by providing compensation fro past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

E.  Order Defendant to make whole the Plaintiff by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including pain, suffering and humiliation, in amounts to be determined at trial.

F.  Order Defendant to pay the Plaintiff punitive damages for Defendant's malicious and reckless conduct in amounts to be determined at trial.

G.  Grant such further relief as the Court deems necessary and proper in the public interest.

H.  Award Plaintiff's attorneys its cost of this action.

## JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all questions of fact raised by its complaint.

Dated:      December 24, 2007
New York, New York.

                                                Respectfully submitted,

                                                Treuhaft & Zakarin, LLP

                                                By: _____
                                                         Norah Hart

                                                TREUHAFT & ZAKARIN LLP

347 Fifth Avenue, Ste 1000
New York NY  10016
917-539-6312
Norah Hart, Esq.
And Miriam Zakarin, Esq.
 Attorneys for Plaintiff


TO:   LITTLER MENDELSON, P.C.
       One Newark Center, 8th Floor
       Newark, New Jersey 07102
       (973) 848-4700
Stacey D. Adams, Esq.
     *Attorneys for Defendant*

14

the trial of this action.

## AS AND FOR A FOURTH CAUSE OF ACTION
(New York State Human Rights Law, Executive Law § 290 *et seq).*

93. Plaintiff repeats and reiterates every allegation contained in all previous paragraphs.

94. The New York State Human Rights Law § 290 et. seq. prohibits unlawful discriminatory practices on the part of employers because of the disability of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

95. In violation of the New York State Human Rights Law, Defendant failed to engage in an interactive process to assess Plaintiff's needs/disability and intentionally retaliated against Plaintiff by subjecting Plaintiff to threatening and harassing treatment on the part of Gap store managers who ignored Plaintiff's requests for reasonable accommodation, routinely denied her the standard company policy breaks and bathroom breaks, and by wrongfully suspending the Plaintiff without pay.

93. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and to otherwise adversely affect her status as an employee because of the Defendant's discrimination and retaliation.

## AS AND FOR A FIFTH CAUSE OF ACTION
(New York City Administrative Code §8-101 *et seq.)*

96. Plaintiff repeats and reiterates every allegation contained in all previous paragraphs.

97. The New York City Administrative Code prohibits discrimination in hiring and firing as well as work assignments, salary, benefits, promotions, performance evaluations, and discipline based upon disability.

98. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and to otherwise adversely affect her status as an employee because of the Defendant's discrimination and retaliation.

## AS AND FOR A SIXTH CAUSE OF ACTION
(Wrongful termination.)

99. Plaintiff repeats and reiterates every allegation contained in all previous paragraphs.

100. As a result of the intentional and negligent conduct set forth above, the Defendants deprived